**LANE & NACH, P.C.**
2025 North Third Street
The Brookstone - Suite 157
Phoenix, Arizona 85004
Telephone No.: (602) 258-6000
Facsimile No.: (602) 258-6003

Adam B. Nach – 013622
Email: adam.nach@lane-nach.com
Stuart B. Rodgers – 025720
Email: stuart.rodgers@lane-nach.com

Attorneys for Jill H. Ford, Trustee

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>OMNI HORIZON GROUP, LLP,<br><br>Debtor. | (Chapter 7 Case)<br><br>No. 2-09-bk-33353-RTB<br><br>**STIPULATED APPLICATION TO COMPROMISE CLAIM**<br>**[F.R.B.P. 9019]** |

Jill H. Ford, Chapter 7 Trustee, by and through her attorneys undersigned, and Clear Energy Systems, Inc. ("Clear Energy"), by and through its attorneys, herein applies to this Court for an Order authorizing them to compromise a claim of the Estate and approve the Settlement Agreement, a true and correct copy of which is Attached hereto as "Exhibit A". In support of this Application, the parties respectfully represents the following Memorandum of Points and Authorities:

## MEMORANDUM OF POINTS AND AUTHORITIES

I. FACTUAL BACKGROUND

1. This case was commenced by voluntary petition filed by the Debtor under Chapter 7 of Title 11, United States Code on December 24, 2009.

2. Jill H. Ford is the duly qualified and acting Trustee in this case ("Trustee").

3. Trustee asserts that among the property of this Estate are Stock Certificate #73 ("Cert 1"), representing 1,658,815 shares of stock in Clear Energy and Stock Certificate #51 ("Cert 2"), representing

500,000 shares of stock in Clear Energy (hereinafter collectively the "Stock").

4. On or around June 5, 2001, a stock certificate for 1,658,815 shares of unregistered common stock in Clear Energy allegedly was issued to Debtor purportedly in exchange for technology that Debtor was to provide to Clear Energy. The certificate stated that the shares were restricted and "transferable only on the books of the Corporation by the holder hereof in person or by duly authorized Attorney upon the surrender of this Certificate properly endorsed."

5. On or around January 1, 2002, a stock certificate for 500,000 shares of unregistered common stock in Clear Energy allegedly was issued to Debtor, bearing the same restrictions on transferability.

6. Clear Energy asserts that the technology that the Debtor provided was not as represented and in fact was useless and without value and the issuance of Cert 1 and Cert 2 was *ultra vires* and void.

7. The Trustee is aware that on September 23, 2005, the Arizona Corporation Commission entered a Judgment, with consent to entry of order by the Debtor and Christopher D. Dedmon and Kimberly Dedmon (the "Dedmons"), finding that Debtor had agreed to transfer approximately 1,867,377 shares of Clear Energy stock to approximately 100 investors, some of which who were not qualified investors, in exchange for investment funds totaling approximately $535,700.00, and all without having been transferred on the books of Clear Energy.Furthermore, The Trustee has seen no documents or other material that indicates the Stock was validly, properly and legally issued to the Debtor.

8. Notwithstanding, Owens & Pyper has asserted a lien on Cert 1 and Cert 2, for outstanding legal fees owed by the Debtor.

9. Clear Energy maintains that Christopher Dedmon, the principle of the Debtor, obtained the Stock, which is claimed to be estate property, through fraud, that the certificates are void, and therefore the Estate's interest in the Stock is without value. Furthermore, Clear Energy has asserted that it will commence litigation against the holder of the Stock, be it the Estate, or any assignee, to have the Stock declared void.

## II. AGREEMENT BETWEEN THE PARTIES:

The Trustee and Clear Energy, through their attorneys, have engaged in discussion and debate regarding the likelihood of success of any litigation between Clear Energy and the Estate relative to the stock, and have discussed the potential costs of litigation for both sides. Trustee has received an offer from Clear Energy to resolve the outstanding dispute, wherein: (1) the Trustee agrees to execute a Stipulated Agreement that assigns all rights and interest of the Estate in the Stock, both Cert 1 and Cert 2, to Clear Energy and declares that the Stock is void and without value; (2) Clear Energy agrees to pay $20,000.00 to the Estate upon approval by the Court of this Stipulated Agreement to avoid litigating the validity of the Stock, and (3) the Parties agree that this settlement is contingent upon Court approval. The Trustee further agrees to execute or endorse the Stock to Clear Energy and execute and any and all documents necessary to accomplish the transfer of the Estate's interest in the Stock to Clear Energy within ten (10) days.

The $20,000.00 in settlement funds shall be made payable to "Jill H. Ford, Trustee" and shall be sent directly to the Trustee within ten (10) days of the Order approving this Stipulated Application to Compromise ("Approval Order"). In light of prior findings of the Arizona Corporation Commission concerning the Debtor and Dedmon, the likelihood of success and the costs associated with protracted litigation, the Trustee believes the settlement is appropriate and in the best interest of the estate after consideration of all of the circumstances.

## III. LEGAL ARGUMENT

The requested relief is authorized by Rule 9019(a) of the Federal Rules of Bankruptcy Procedure which provides as follows:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States Trustee, the debtor, the indenture trustee as provided in Rule 2002 and to any other entity as the court may direct.

The Trustee, in the exercise of her best business judgment and in consideration of the requirements of A & C Properties, 784 F.2d 1377 (9th Cir. 1986), In re Woodson, 839 F.2d 610 (9th Cir. 1988), and In re Schmitt, 215 B.R. 417 (9th Cir. BAP 1997), believes that the proposed compromise and settlement is an appropriate resolution of this matter.

Bankruptcy courts have broad discretion in approving compromise agreements. In re Woodson 839 F.2d at 620. The Court may approve a compromise if it is fair and equitable. Id. In determining the fairness and adequacy of a proposed compromise agreement, the Court should consider the following four factors: (1) the probability of success in litigation; (2) the difficulties, if any, to be encountered in collection; (3) the complexity of the litigation involved as well as the expense, inconvenience and delay necessarily attendant to the litigation; and (4) the paramount interest of creditors and a proper deference to their reasonable views.

Consideration of these factors does not require the Court to decide questions of law or fact raised in the controversies sought to be settled, or determine that the compromise presented is the best possible outcome. Rather, the Court need only canvass the issues to determine whether the settlement falls "below the lowest point in the zone of reasonableness". Newman v. Stein, 464 F.2d 689, 698 (2nd Cir. 1972). cert. denied. 409 U.S. 1039 (1972); see also In re Pennsylvania Truck Lines, Inc., 150 B.R. 595, 598 (Bankr. E.D. Pa. 1992) (holding that a bankruptcy court must consider these factors to see whether the settlement falls below the lowest point in the range of reasonableness.) Accordingly, if the court finds the compromise does not fall below the threshold of reasonableness, the compromise should be approved. In re Planned Protective Services, Inc., 130 B.R. 94, 99 n.7 (Bankr. C.D. Cal. 1991). The Trustee believes the proposed settlement is in the best interest of the creditors and parties-in-interest of this Estate.

WHEREFORE, Jill H. Ford, Trustee, and Clear Energy Systems, Inc. pray for an Order of this Court as follows:

    a. Authorizing the Trustee to accept the sum of $20,000.00 as full and complete

Lane & Nach, P.C.  
2025 North Third Street, Suite 157  
Phoenix, AZ 85004

4

satisfaction of the Estate's interest in the Stock and determining that the issuance of the Stock and Cert 1 and Cert 2 are void;

      b. Approving the Stipulated Agreement; and,

      c. For such other and further relief as this Court deems just and proper.

RESPECTFULLY SUBMITTED this ___14th___ day of February, 2011.

**LANE & NACH, P.C.**

By___/s/ SBR 025720___ SBR
    Adam B. Nach
    Stuart B. Rodgers
    Attorneys for Trustee

**TIFFANY & BOSCO, P.A.**

By___/s/ SBR 025720 on behalf___ SBR
    Christopher R. Kaup
    J. Daryl Dorsey
    Attorneys for Clear Energy Systems, Inc.

COPY of the foregoing mailed/via electronic notification as follows:

Darren E. Holmes
Farley & Holmes
18301 N. 79th Ave., #G191
Glendale, AZ 85308
Email: Darren@farleyholmes.com
Attorney for Debtor

Mark B. Pyper
Owens & Pyper, PLC
3030 N. Central Ave #1406
Phoenix, Arizona 85012


By___/s/ S. Rochin___

# Exhibit "A"

**LANE & NACH, P.C.**
2025 North Third Street
The Brookstone - Suite 157
Phoenix, Arizona 85004
Telephone No.: (602) 258-6000
Facsimile No.: (602) 258-6003

Adam B. Nach – 013622
Email: adam.nach@lane-nach.com
Stuart B. Rodgers – 025720
Email: stuart.rodgers@lane-nach.com

Attorneys for Jill H. Ford, Trustee

**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| In re:<br><br>OMNI HORIZON GROUP, LLP,<br><br>Debtor. | (Chapter 7 Case)<br><br>No. 2-09-bk-33353-RTB<br><br>**STIPULATION, SETTLEMENT AGREEMENT, AND CONDITIONAL ASSIGNMENT BY AND BETWEEN JILL H. FORD, CHAPTER & TRUSTEE FOR OMNI HORIZON GROUP, LLP, AND CLEAR ENERGY SYSTEMS, INC.** |

This Stipulation, Settlement Agreement, and Conditional Assignment ("Settlement Agreement") is entered by and between Jill H. Ford, Chapter 7 Trustee (the "Trustee") for Omni Horizon Group, LLP, by and through her attorneys undersigned, and Clear Energy Systems, Inc. ("Clear Energy"), creditor and party-in-interest in the above captioned Chapter 7 case, by and through its attorneys. The purpose of this Agreement is to fully settle and resolve all claims, defenses, causes of actions, and obligations as between Clear Energy and Trustee, arising from or related to the validity of the Stock Certificate #73, representing 1,658,815 shares of stock in Clear Energy ("Cert 1") and Stock Certificate #51, representing 500,000 shares of stock in Clear Energy ("Cert 2") (collectively hereinafter "Stock").

As and for this Stipulated Agreement, the Trustee and Clear Energy hereby STIPULATE and AGREE as follows:

## I. RECITALS.

1.1     On or around June 5, 2001, a stock certificate for 5,500,000 shares of unregistered common stock in Clear Energy allegedly was issued to Debtor purportedly in exchange for technology that Debtor was to provide to Clear Energy. The certificate stated that the shares were restricted and "transferable only on the books of the Corporation by the holder hereof in person or by duly authorized Attorney upon the surrender of this Certificate properly endorsed." On or around January 1, 2002, a stock certificate for 500,000 shares of unregistered common stock in Clear Energy allegedly was issued to Debtor, bearing the same restrictions on transferability.

1.2     Clear Energy asserts that the technology that the Debtor provided was not as represented and in fact was useless and without value and the issuance of Cert 1 and Cert 2 was *ultra vires* and void.

1.3     On September 23, 2005, the Arizona Corporation Commission entered a Judgment, with consent to entry of order by the Debtor and Christopher D. Dedmon and Kimberly Dedmon (the "Dedmons"), finding that Debtor had agreed to transfer approximately 1,867,377 shares of Clear Energy stock to approximately 100 investors, some of which who were not qualified investors, in exchange for investment funds totaling approximately $535,700.00, and all without having been transferred on the books of Clear Energy.

1.4     Clear Energy commenced litigation against the Debtor, the Dedmons in Maricopa County Superior Court seeking, among other counts, a rescission of the transfer of Stock to the Debtor.

1.5     Owens & Pyper asserts that it has a perfected lien on Cert 1 for debts owed by the Debtor arising out of legal fees. Owens & Pyper filed a UCC Financing Statement on August 13, 2009 with the Secretary of State covering the Stock.

1.6     On December 24, 2009, the Debtor filed a voluntary bankruptcy petition under Chapter 7 of Title 11, United States Code.

1.7   Debtor listed on its schedules of assets and liabilities, personal property Cert 1 and Cert 2 as the only disclosed property of the Debtor.

1.8   Owens & Pyper is in physical possession of Stock Certificate #73, but not #51.

1.9   Stock Certificate #73 is not endorsed.

1.10   Consistent with assertions in the Debtor's Schedules, Trustee identified the Stock as property of the Estate.

1.11   The Trustee has seen no documents or other material that indicates the Stock was validly, properly and legally issued to the Debtor.

1.12   On February 9, 2010, Clear Energy filed a motion for relief from the bankruptcy stay ("Motion") in order to proceed with the Superior Court litigation with the goal of having the stock transfer rescinded and/or have the Stock declared void.

1.13   Debtor filed an Objection to Clear Energy's Motion on February 24, 2010 and Trustee filed an Objection to the Motion also on February 24, 2010.

1.14   A hearing was held and Clear Energy's Motion was denied without prejudice.

1.15   Clear Energy has asserted that it will commence litigation against the Estate, or any party to whom the Stock is assigned, to have the Stock declared void, or in the alternative, to have the initial issuance of Stock rescinded.

1.16   The Trustee and Clear Energy, through their attorneys, have engaged in discussion and debate regarding the likelihood of success of any litigation commenced by Clear Energy, and have discussed the potential costs of litigation for both sides.

1.17   To resolve the only contested issue between the Trustee and Clear Energy – the validity of the Stock – Trustee and Clear Energy enter into this Stipulated Agreement. This Stipulated Agreement settles and resolves all claims, defenses, causes of actions, and obligations by and between the Trustee and Clear Energy, arising from or related to the validity of the Stock.

### Validity Of The Stock Owned By Debtor

1.18    The Stock was placed into the name of the Debtor based upon fraudulent representations by Dedmon for no or insufficient consideration without proper corporate authority and Debtor proceeded to sell and otherwise dissipate the stock without regard to the restrictions placed upon the transfer of the stock.

1.19    As a result of these actions, the Stock held by the Debtor is void, or in the alternative the issuance of the Stock is properly rescinded.

1.20    Based upon these actions surrounding the issuance of the Stock, Clear Energy, will not recognize holders of the Stock as having any rights as shareholders and therefore, the Stock has no value.

### Assignment Of Estate's Interest In The Stock

1.21    The Estate hereby assigns any and all of its interest in, and rights and obligations arising from, the Stock to Clear Energy.

1.22    Clear Energy, as successor in interest, hereby releases any Claims against the Estate arising from the validity of the Stock.

1.23    This assignment does not constitute a sale of the Stock and any funds remitted to the Trustee by Clear Energy is in settlement of impending litigation over the validity of the Stock, not for the Stock itself.

**II.    OPERATIVE PROVISIONS.**

2.1    The "Recitals" section of this Stipulated Agreement is hereby incorporated into the "Operative Provisions" section of this Stipulated Agreement, without distinction between the two sections.

2.2    Upon entry of an Order approving this Stipulated Agreement and incorporating the Recitals section set forth above (an "Approval Order"), a form of which is attached hereto as Exhibit 1, this Stipulated Agreement will govern all issues as between Trustee and Clear Energy, arising from or

related to the Stock and the validity of the Stock.

2.3 The Approval Order will authorize the Trustee to accept the sum of $20,000.00 tendered upon the signing of the Stipulated Application (the "Payment").

2.4 The Approval Order will provide that the Trustee assigns to Clear Energy all of the Trustee's causes of action under the Bankruptcy Code arising out of her ownership interest the Stock and that the Stock is void and of no value. It also requires that the Trustee will endorse the Stock to Clear Energy and execute any and all documents necessary to accomplish the transfer of the Estate's interest in the Stock to Clear Energy within ten (10) days.

2.5 This Stipulated Agreement is without prejudice to any rights of the Trustee or Clear Energy not expressly addressed herein.

2.6 Each party who executes this Stipulated Agreement confirms and agrees that it has executed this Stipulated Agreement solely for the purposes stated herein, and not in reliance upon any other oral or written prior agreement, promise, representation, warranty, or any fact or belief as to any fact not expressly recited in this Stipulated Agreement.

2.7 This Stipulated Agreement represents a fully integrated and complete agreement among the parties and no other agreements whether they be oral, written, or otherwise shall modify or affect the terms of this Stipulated Agreement.

2.8 Time and strict performance are of the essence of this Stipulated Agreement.

2.9 This Stipulated Agreement, and all terms and provisions hereof, will inure to the benefit of the parties hereto and their respective heirs, assigns, and successor-in-interest of every kind.

2.10 There are no third party beneficiaries to this Stipulated Agreement.

2.11 All persons signing this Stipulated Agreement hereby expressly warrant and represent that they are duly authorized to do so and that such agreements have been authorized, executed, and delivered by the party on whose behalf such person has signed in accordance with applicable law.

2.12    This Stipulated Agreement may be signed in counterparts and facsimile signatures shall be deemed original and effective signatures to the Stipulated Agreement.

2.13    If any provision of this Stipulated Agreement is held to be inoperative, unenforceable, or invalid under present or future laws effective during the term of this Stipulated Agreement, such shall be inoperative, unenforceable, or invalid without affecting the remaining provisions; this Stipulated Agreement shall be construed and enforced as if such illegal, invalid, or unenforceable provision had never comprised a part of this Agreement.

DATED this ____14th____ day of February, 2011.

**LANE & NACH, P.C.**

By____/s/ SBR 025720____ SBR
    Adam B. Nach
    Stuart B. Rodgers
    Attorneys for Trustee

**TIFFANY & BOSCO, P.A.**

By____/s/ SBR 025720 on behalf of____ SBR
    Christopher R. Kaup
    J. Daryl Dorsey
    Attorneys for Clear Energy Systems, Inc.